IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBORAH JOANN G.,[1]

      Plaintiff,

v.

Commissioner, Social Security
Administration,

      Defendant.

6:18-cv-00237-BR

OPINION AND ORDER

**KATHERINE EITENMILLER**
**MARK A. MANNING**
Harder Wells Baron & Manning
474 Willamette Street
Eugene, OR 97401
(541) 686-1969

      Attorneys for Plaintiff

---

[1] In the interest of privacy and pursuant to the recommendation of the Judicial Conference of the United States, this Opinion and Order uses only the first name and the initial of the last name of the nongovernmental parties.

1 - OPINION AND ORDER

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**JOSEPH JOHN LANGKAMER**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2212

      Attorneys for Defendant

**BROWN, Senior Judge.**

Plaintiff Deborah Joanne G. seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for SSI on August 7, 2013, and alleged a disability onset date of June 15, 2011.  Tr. 190-

2 - OPINION AND ORDER

95.[2] Her application was denied initially and on reconsideration. An Administrative Law Judge (ALJ) held a hearing on August 10, 2016. Tr. 36-73. At the hearing the ALJ amended Plaintiff's onset date to August 7, 2013. Tr. 39. Plaintiff and a vocational expert (VE) testified at the hearing, and Plaintiff was represented by an attorney.

On October 4, 2016, the ALJ issued an opinion in which she found Plaintiff is not disabled and, therefore, is not entitled to benefits. Tr. 19-34. On November 30, 2017, that decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. Tr. 1-7. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

## BACKGROUND

Plaintiff was born on August 6, 1963, and was 53 years old at the time of the hearing. Tr. 190. Plaintiff has a GED. Tr. 215. Plaintiff has past relevant work experience as a telemarketer. Tr. 29.

Plaintiff alleges disability due to migraines, chronic obstructive pulmonary disease (COPD), arthritis, depression, and an anxiety disorder. Tr. 75.

Except when noted, Plaintiff does not challenge the ALJ's

---

[2] Citations to the official transcript of record filed by the Commissioner on August 30, 2018, are referred to as "Tr."

3 - OPINION AND ORDER

summary of the medical evidence. After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence. *See* Tr. 25-28.

**STANDARDS**

The initial burden of proof rests on the claimant to establish disability. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To meet this burden a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ must develop the record when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11

(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). It is more than a mere scintilla [of evidence] but less than a preponderance. *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. § 416.920. Each step is potentially

dispositive.

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. 20 C.F.R. § 416.920©. *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe they preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). *See also Keyser*, 648 F.3d at 724. The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's Residual Functional Capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a

week, or an equivalent schedule." SSR 96-8p, at *1. In other words, the Social Security Act does not require complete incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. 20 C.F.R. § 416.920(a)(4)(iv). *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. 20 C.F.R. § 416.920(a)(4)(v). *See also Keyser*, 648 F.3d at 724. Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 416.920(g)(1).

## **ALJ'S FINDINGS**

At Step One the ALJ found Plaintiff has not engaged

in substantial gainful activity since her August 7, 2013, amended alleged onset date. Tr. 21.

At Step Two the ALJ found Plaintiff has the severe impairments of COPD, migraines, bilateral hand and knee arthralgias, major depressive disorder, social anxiety disorder, and general anxiety disorder. Tr. 21. The ALJ found Plaintiff's conditions of hypertension, a history of hepatitis B, and polysubstance dependence are nonsevere. Tr. 21.

At Step Three the ALJ concluded Plaintiff's impairments do not meet or equal the criteria for any Listed Impairment from 20 C.F.R. part 404, subpart P, appendix 1. The ALJ found Plaintiff has the RFC to perform light work with the following limitations: sitting, standing, and/or walking "for a total of about six hours each in an eight-hour day, with normal breaks"; frequent climbing, kneeling, crouching, crawling, and lifting up to ten pounds; occasional lifting and/or carrying twenty pounds; understanding and carrying out only simple instructions "in a work environment free of fast-paced production work"; and "no more than occasional, cursory interaction with the general public, coworkers, and supervisors." Tr. 24.

At Step Four the ALJ found Plaintiff is unable to perform her past relevant work. Tr. 29.

At Step Five the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 29.

Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) improperly rejected Plaintiff's testimony in part and (2) improperly partially rejected the opinion of examining psychologist Gregory Cole, Ph.D.

**I. The ALJ did not err when she partially rejected Plaintiff's testimony.**

Plaintiff alleges the ALJ erred by failing to provide clear and convincing reasons for partially rejecting Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Garrison v. Colvin*, 759 F.3d 995 (9th Cir. 2014). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and

9 - OPINION AND ORDER

convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id*. The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified she cannot work because her "physical health has been deteriorating" and she "can't do public." Tr. 47. Plaintiff stated she has migraine headaches one-to-three times per month that are caused by fragrances or strong smells and that last two-to-three hours. Tr. 51.

Plaintiff noted she lives in a shelter with other people but she is able to manage because "it's pretty empty during the day. . . . We don't have to be all together until nighttime . . . and then I just take my shower and I'm usually asleep before eight or ten people get up there." Tr. 47. Plaintiff stated she is able to do her required chores by waiting until "everybody is done with theirs and gone . . . so people aren't around" her. Tr. 55. Plaintiff also sits outside of the shelter during the day to avoid people. Plaintiff testified she did not look for work after her last job ended in 2010 because she "didn't figure it would do any good [because she] can't be around people in a structured setting." Tr. 56. Plaintiff stated she has to take someone shopping with her because she feels like

strangers in the store are going to attack her.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but Plaintiff's testimony "concerning the intensity, persistence and limiting effects of [her] symptoms [is] not entirely consistent with the medical evidence and other evidence in the record." Tr. 25. As to Plaintiff's COPD, the ALJ noted medical-imaging studies of Plaintiff's chest were normal; clinical examinations of Plaintiff did not reveal any chest pain, shortness of breath, cough, or wheezing; and pulmonary function studies from December 2015 did not show any objective lung disease or "air trapping" and reflected "normal diffusion capacity." Tr. 594. In addition, Plaintiff reported significant improvement in her breathing after she started taking Tudorza. Tr. 485-86, 491-92. Moreover, the record reflects Plaintiff continued to smoke despite more than one medical professional recommending that she stop.

The ALJ also noted Plaintiff was examined by Derek Leinenbach, M.D., on February 12, 2014. Dr. Leinenbach diagnosed Plaintiff with mild COPD, migraine headaches, degenerative joint disease in Plaintiff's hands and knees, and hypertension. Tr. 372. Dr. Leinenbach found Plaintiff could stand and/or walk for a total of "6 to 8 hours in an 8 hour work day"; can sit without limitation, can lift and/or carry ten pounds frequently

11 - OPINION AND ORDER

and twenty pounds occasionally; and can climb, balance, stoop, kneel, crouch, crawl, reach, handle, finger, and feel frequently. Tr. 372.

As to Plaintiff's mental-health impairments, the ALJ noted Plaintiff reported uncontrolled depression in October 2014, but she had not been on any medications because she did not have insurance.  Tr. 501, 514.  By March 2015 Plaintiff regularly reported her mental-health symptoms were "typically controlled" by medication, and medical professionals reported Plaintiff had "normal mood and affect."  Tr. 491, 494.  Plaintiff continued to report her medication was effective for controlling her mental-health symptoms, and medical-health professionals reported Plaintiff had normal mood and affect until October 2015.  In October 2015 Plaintiff had a "significant increase in her mental health symptoms including a suicidal gesture."  Tr. 27.  When Plaintiff changed medication and began receiving regular medication and therapy, her mental health improved.  By April 2016 Plaintiff reported improved mood, and medical-health professionals reported she had a normal affect.  In August 2016 Malia Delohery Dart, L.C.S.W., reported Plaintiff "continu[ed] to use therapy well.  She deals with significant stress in her living situation and handles it quite well."  Tr. 866.

The Court concludes on this record that the ALJ did not err when she partially rejected Plaintiff's testimony because she

provided clear and convincing reasons supported by substantial evidence in the record for doing so.

**II.  The ALJ erred when she gave only "partial weight" to Dr. Cole's opinion, but the error is harmless.**

Plaintiff asserts the ALJ erred when she gave only partial weight to the opinion of Dr. Cole, examining psychologist.

An ALJ may reject an examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002).  When the medical opinion of an examining physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1996).

On July 6, 2016, Dr. Cole conducted a psychodiagnostic evaluation of Plaintiff.  Plaintiff reported her energy level and ability to concentrate have diminished.  Tr. 546.  Plaintiff stated she "experiences anxiety 'in social and unfamiliar situations and around unfamiliar people.'  She . . . avoids social situations because of her anxiety."  Tr. 546-47.  Dr. Cole noted Plaintiff's attitude "was overall engaged and cooperative," and her "thought processing and thought content were generally organized."  Tr. 546.  Dr. Cole found Plaintiff "overall

 13 - OPINION AND ORDER

exhibited below average intellectual capabilities." Tr. 547. Specifically, Dr. Cole noted Plaintiff's testing indicated "mild problems" with attention and concentration and "slightly below average ability" in immediate and delayed memory capacity. Tr. 547. In addition, the Beck Depression Inventory-II indicated a "severe level of self-reported depression symptomatology." Tr. 547. Dr. Cole concluded Plaintiff

> could benefit from follow-up psychological services and behavior medication management, considering her behavioral symptomatology. . . . [Plaintiff] was able to sustain simple tasks, and no problems completing a simple multi-step task were observed. . . . [I]f [Plaintiff] pursues a vocational placement in the near future, then . . . [her] level of anxiety would be the primary factors [*sic*], which would impact her overall level of vocational success.

Tr. 548-49. On July 6, 2016, Dr. Cole also completed a Medical Source Statement in which he indicated Plaintiff had moderate limitations in her ability to remember and to understand complex instructions and marked[3] limitations in her ability to carry out complex instructions; to "make judgments on complex work-related decisions"; to interact appropriately with the public, supervisors, and coworkers; and to respond appropriately to

---

[3] The Social Security Regulations define "marked" as "causing very significant interference" with a claimant's ability to perform work-related activities. 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 12.00(C)(1). A marked limitation is one of such degree as "to interfere seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id*.

"usual work situations and to changes in a routine work setting." Tr. 551.

The ALJ gave partial weight to Dr. Cole's opinion. Although it is not entirely clear, it appears the ALJ rejected Dr. Cole's finding that Plaintiff suffered marked limitations in her ability "to interact appropriately" with the public, supervisors, and coworkers. Plaintiff testified at the hearing that she goes outside during the day so she can be by herself, she showers early and goes to sleep before other people arrive in the sleeping area, and she waits until she is alone to complete her required chores. Plaintiff's living situation and activities of daily living, therefore, support Plaintiff's limited ability to interact with other people. The ALJ limited Plaintiff to "no more than occasional, cursory interaction with the general public, coworkers, and supervisors" based on Plaintiff's activities of daily living and the fact that she was living in a group facility.

In any event, the VE testified the jobs she identified in the national economy based on the ALJ's hypothetical involved situations in which Plaintiff would not have any contact with the general public and coworkers would be 15 feet away in the electronics-worker and mail-sorter jobs and "50 feet on the other side of a wall" in the price-marker job. Thus, the jobs in the national economy that the ALJ concluded Plaintiff could perform

did not contradict Dr. Cole's opinion that Plaintiff was markedly limited in her ability "to interact appropriately" with the public and coworkers.

On this record the Court concludes the ALJ erred when she partially rejected Dr. Cole's opinion because she did not provide legally sufficient reasons supported by substantial evidence in the record for doing so. The Court, however, concludes the error is harmless because none of the jobs identified by the VE require interaction with the public or close contact with coworkers or supervisors.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 2nd day of April, 2019.

/s/ Anna J. Brown

ANNA J. BROWN
United States Senior District Judge